**O'DONNELL v. HALLADAY et al.**

No. 4087.

Court of Civil Appeals of Texas. El Paso.

May 1, 1941.

Rehearing Denied June 12, 1941.

848

John T. Hill and John H. Harper, both of El Paso, for appellant.

M. Scarborough and H. R. Gamble, both of El Paso, for appellees.

PRICE, Chief Justice.

This is an appeal from the District Court of El Paso County, Sixty-Fifth Judicial District. Tom O'Donnell, individually and as trustee for the Townsend Recovery Plan, as plaintiff, sued Herbert Halladay, administrator of the estate of George W. Derr, deceased, and the El Paso National Bank of El Paso County, Texas, as defendants. Individually plaintiff O'Donnell sought to recover of the administrator the sum of $1,-500, and to recover as trustee the balance of the fund on deposit in the defendant Bank at the time of the death of George W. Derr.

The parties will be here designated as they were in the trial court, "plaintiff" being used to designate O'Donnell in both his individual and trust capacities; "defendant" to designate the administrator, and the other defendant will be referred to as "the bank".

Plaintiff alleged that at the time of the death of George W. Derr there was on deposit in the bank in a savings account the sum of $2,508.95, and that this deposit had been augmented by the sum of $400, representing a draft drawn by the deceased Derr on a bank in Pennsylvania, and which was subsequently credited to the account aforesaid. Further, that on the 24th day of January, 1940, Derr, believing and realizing that his death was imminent, delivered to the plaintiff all evidences of his claim to these funds with the purpose of then and there making a gift to said O'Donnell, in his own personal right in the sum of $1,500 thereof, and the balance of the account in trust for the Townsend National Recovery Plan, that is, Local Club No. 6, at El Paso, Texas, thereof. The documents alleged to have been delivered by deceased to O'Donnell consisted of a receipt dated December 24, 1938, and marked "Savings"; a receipt dated 24th day of January, 1940, evidencing the deposit of a draft drawn on a bank in Pennsylvania in the sum of $400. Plaintiff sought the recovery of these foregoing funds individually and as trustee, alleging a gift to him for that purpose by the deceased Derr immediately prior to his death.

The bank answered by tendering the funds into court.

The defendant answered by general demurrer, general denial, a special answer denying that a gift was made by deceased Derr to the plaintiff, and setting up that defendant had duly qualified as the administrator of the estate of Derr, and asserted title as against O'Donnell to the funds paid into the registry of the court by the bank as against defendant in both his individual and trust capacities.

The trial was before a court and jury, submission on special issues. Upon the return of the verdict both parties moved for judgment on the verdict. Judgment was rendered for defendant Herbert Halladay, in his capacity as administrator, and that the plaintiff take nothing against him in that capacity. A fee of $150 was allowed the bank, and the money in the registry of the court in the sum of $2,929.21 was adjudged to be the property of defendant as administrator, and a recovery was adjudged to defendant in that amount as against plaintiff. Plaintiff has perfected appeal from this judgment.

Two special issues were submitted to the jury, as follows:

No. 1: "Do you find from a preponderance of the evidence that, on the 24th day of January, 1940, the deceased, George W. Derr, had mental capacity to make a gift?"

The jury found the affirmative on this issue.

No. 2: "Do you find from a preponderance of the evidence that, on or about the 24th day of January, 1940, the deceased, George W. Derr, made a gift of $1500.00 to Tom O'Donnell, and entrusted him with the rest of his personal property for distribution to other parties?"

Upon the request of the jury, Special Issue No. 2 was divided into two parts, as follows:

"Question No. 2A. Do you find from the preponderance of the evidence that on or about the 24th day of January, 1940, the

deceased Geo. W. Derr, made a gift of $1500.00 to Tom O'Donnell?"

The jury answered this question in the negative.

"Question No. 2B. Do you find from a preponderance of the evidence that on or about the 24th day of January, 1940, the deceased George W. Derr intrusted Tom O'Donnell with his personal property for distribution?"

This question the jury answered in the affirmative.

Plaintiff offered in evidence Savings Account Book No. 7520, which was a savings account of George W. Derr, showing a series of deposits and withdrawals by said Derr. It showed a balance in his favor of $2,508.97; a receipt by the bank dated January 24, 1940, for a draft drawn for the balance of George W. Derr on the S. J. Gully Bank of Farrell, Pennsylvania. Endorsed on the receipt is "Savs. pasbook #4176 showing bal. of 400.00 attached; Apply Proceeds Acct. Sav. Acct. #7520." Also a certificate of deposit dated December 24, 1938, showing a net deposit of $2,642.64 to the credit of Derr. Likewise the following instrument:

"El Paso, Texas, Jan. 23–1940.
"To Administrator Tom O'Donnell without Bond
"Mr. George Derr Wills to the following Nieses and Friends the Following Amounts
"Payments due from Farm sold in Mercer County Pa. to be divided equally between the following Nieses
"Mrs. Ann Perkins
"149 N. Alta Vista Ave Youngstown, Ohio
and—
"Mrs. Mary Mosman
"South Plymatring Transfer, Pa.
"To the following Friends $100.00 Dollars Each
"Mrs. Harry Benton, West Salem, Pa.
"$100.00 Dollars to Mrs. Rose Hiley, Transfer, Pa.
"George W. Derr
"$1500.00 Dollars to Tom O'Donnell El Paso Tex. For services Rendered the Past few years
"Witness
"Tom O'Donnell
"Albert E. Eaton

"El Paso, Texas Jan 23–1940
"Am Requesting Administrator Mr. Tom O'Donnell without bond to see that I have a decient Burial in Washington Park Cem-

entary and that he has placed a Small Marker on My Grave
"If any Money is left after all Donations and Expenses are taken care of same is left to the Townsend Club of El Paso Texas
"George W. Derr
"Witness
"Tom O'Donnell
"Albert S. Eaton."

Under what circumstances plaintiff O'Donnell obtained the pass book does not clearly appear. Derr died on the 26th day of January, 1940; on the 24th day of January, 1940, O'Donnell had this pass book in his possession; he took same to the bank, together with a draft drawn by Derr for a balance of about $400 Derr had on deposit in the bank in Pennsylvania. The receipt given to O'Donnell for the Derr draft showed that the proceeds thereof were to be credited to the Derr savings account. There is no direct evidence as to just when this book for the savings account was delivered by Derr to O'Donnell; nor is there direct evidence as to the purpose for which this book was delivered to O'Donnell.

For some two or three weeks prior to his death Derr had been desperately sick at St. Joseph's Sanatorium. It is clear that at this time he knew of his desperate condition, and that he probably would not long survive; O'Donnell had known him for several years; the evidence indicates a close friendship between the two men. Derr likewise was a member of the Townsend Club, and seems to have taken great interest therein. O'Donnell was present in the room of Derr in the Sanatorium two or three times about January 24, 1940, and prior thereto. On the 24th he seems to have deposited in the savings account aforesaid a check drawn by Derr in the sum of $170.84. The evidence seems to indicate that at this time Derr was absolutely unable to go to the bank and transact business.

Sister Philomina was Derr's nurse. She said Mr. Derr had told her: " 'I want Mr. O'Donnell to take care of my things. He has been a friend of mine, and I feel he is nearer to me than my relatives,' and he mentioned that two or three times that I know of, and I know at the time Mr. O'Donnell was there and fixed up the papers. I really didn't see the papers, or anything like that. He said Mr. O'Donnell would dispose of all his things, 'I told him everything what I wanted,' so that

is all that was said about it. He told me two or three times he had turned over his stuff to Mr. O'Donnell."

On cross-examination she said that when Mr. Derr said he wanted the stuff turned over to Mr. O'Donnell, he was referring to the valises and personal property that he had at the hospital; that he didn't mention anything else. "He said he wanted Mr. O'Donnell to take care of his things."

Several other witnesses testified to the close personal relations between O'Donnell and Derr.

Albert S. Eaton, a fellow member of the Townsend Club, talked to Derr probably on the 25th of January, 1940. He said that Derr stated he wanted witness to sign as a witness to a will. "I want you to assist, if you can in any way, Mr. O'Donnell for the execution of it, carrying it out, according to the plans as laid down in the will." This probably refers to the instrument we have hereinbefore copied.

Eaton testified that he did not sign such instrument as a witness, but that he didn't sign same in the presence of Derr. Derr seems from the evidence to have been a man advanced in years, very sick with tuberculosis, and having no near relatives.

■ The instrument we have heretofore copied purporting to be a will does not convey any title to the property involved, either in trust or otherwise, to the plaintiff. This instrument has never been probated. The evidence seems to indicate that it cannot be probated because same was not witnessed as required by law. As to this we have no jurisdiction to decide.

■ As an evidence of what was in the mind of Derr at the time of signing same, it seems to indicate an intention to give the property by will as therein indicated. It negatives the intention of a gift in praesenti. It is true that probably the intention therein expressed was not carried out on account of failure to observe the formalities requisite to the making of a valid will. It likewise evidenced his state of feeling toward the plaintiff O'Donnell and toward the Townsend Club. His feeling toward O'Donnell and the Townsend Club might be corroborative of and consistent with the gift alleged. These circumstances, however, in and of themselves are insufficient to show a gift to O'Donnell personally and in trust for the Townsend Club.

■ The possession of the pass book is a tangible circumstance, but this, standing alone, is not sufficient to show a gift of the credit. The pass book, it is true, was an evidence of an indebtedness of the bank to Derr. This indebtedness was not a tangible thing—it was a mere chose in action. It is true the bank book was the symbol of or evidence of the indebtedness of the bank to Derr. We do not mean to hold that there may not be a gift of an intangible thing. There may be, and there may be a symbolic delivery thereof, but such a delivery of possession must be with the intention to invest the donee with the title thereto.

■ In this case the possession of the pass book by O'Donnell is entirely consistent with the continued ownership of the deposit by Derr. O'Donnell seems to have had possession of the pass book in order to have credits made therein for Derr. The statement made by Derr to Sister Philomina to the effect that he wanted O'Donnell to manage things or take charge of things after his death do not evidence an intention to vest the title in praesenti in O'Donnell. At or about the time he made these declarations he signed an instrument which, if it had been executed in proper form, would have given O'Donnell the right to take charge of his property. This instrument, to our minds, negatives the idea of a gift in Praesenti.

■ The law applicable here is declared in Chevallier v. Wilson, 1 Tex. 161. The Chief Justice quotes from Kent's Commentaries with approval, as follows: "Gifts inter vivos have no reference to the future, and go into immediate and absolute effect. Delivery is essential, both at law and in equity, to the validity of a parol gift of a chattel, and it is the same whether it be a gift inter vivos or causa mortis."

The case of Chevallier v. Wilson, supra, so far as we have been able to find, has never been departed from in this State. The principles announced have in a long line of cases been reiterated and reaffirmed. Its authority has in no way been impaired by the distinction noted in Lord v. Life Ins. Co., 95 Tex. 216, 66 S.W. 290, 56 L.R.A. 596, 93 Am.St.Rep. 827.

In order that there be an effective gift, either causa mortis or inter vivos, there must be a delivery to or for the benefit of the donee. Harmon v. Schmitz, Tex.Com.

App., 39 S.W.2d 587. By "delivery" in this sense is meant a surrender of the possession of the property, or the symbol of the property, to the donee, with the intention and purpose of then vesting title in the donee.

■ Possession by the alleged donee of the savings bank book of itself did not establish a gift of the deposit to him or raise even a presumption thereof. 40 A.L.R. 1257; 84 A.L.R. 562.

In 28 Corpus Juris, § 83, under the title of Gifts, it is said: "The mere possession of the property by the donee is insufficient evidence of gift, for this may be consistent with the mere custody or agency."

■■ Under the testimony there is no evidence of a declaration, contemporaneous, prior or subsequent, to the possession of the bank book in question from which it might be inferred that the intention on the part of Derr was to give the deposit to O'Donnell. The purported ineffective will is no evidence of such intention. In fact, it negatives such an intention. A will evidences an intention to make gift in the future. It evidences an unexecuted intention to transfer title in the future. The essence of a gift is an executed intention of the transfer of title. A will is without legal efficacy up to the moment of death. A gift causa mortis, revokable though it may be, operates in praesenti. If the deposit in question at the time and upon the death of Derr was not the property of O'Donnell he must fail herein. Here he urges no claim against the estate of Derr, but that the administrator thereof has wrongfully assumed dominion and control over complainant's property.

It is unnecessary to decide whether or not the delivery of a savings bank book with intention to vest the title to the deposit in the donee is sufficient to constitute a gift. We think it would be sufficient. Lord v. Life Ins. Co., supra. But here, we have no evidence of the delivery of the savings bank book with such intention.

■ We are inclined to accept the construction of the defendant of the finding of the jury in response to issue 2B. Under the evidence we think same should be held to refer to the tangible, physical property present in the room in the sanatorium. The $1,500 referred to in the issue as formulated was an integral part of the entire deposit. The only evidence of any desire or intention to make a gift to O'Donnell is to be found in the purported will. It is so as to the gift to the Townsend Club, and the other legacies set forth in the will. Under the evidence there might be a different finding as to the bags, etc., present in the room. However, there is no evidence of any delivery of this property to O'Donnell. Sister Philomina's statement was in substance that Derr said upon his death he wanted O'Donnell to take charge of the property. There is no evidence that O'Donnell prior to Derr's death was ever in possession of any of such property.

A proper judgment under the evidence has been entered herein.

The case is affirmed.