WILLIAM R. WELLS V. MRS. LESLIE SANSING ET AL

No. A-3402. Decided February 6, 1952.
(245 S. W., 2d Series, 964.)

*C. B. Stanley,* of Houston, for the petitioner.

The Court of Civil Appeals erred in holding that there was a valid parol gift of the diamond ring when there was no evidence of the actual transfer of dominion and control of the ring from donor to donee. Chevallier, Admr., v. Wilson, 1 Texas 160; Baldwin v. Fleck, 168 S. W. 2d 904; Harmon v. Schmitz, 39 S. W. 2d 587.

*Madison Rayburn,* of Houston, for respondents.

The Court of Civil Appeals correctly held that the evidence

in this case was sufficient to raise appropriate issues of fact and its decision being based upon the sufficiency and weight of the evidence the holding was within the exclusive jurisdiction of the Court of Civil Appeals, and the Supreme Court lacks jurisdiction to pass upon the application. Schwingle v. Keifer, 105 Texas 609, 153 S.W. 1132; Belser v. Herman Hale Lumber Co., 41 S. W. 2d 208; Schuhmacher Co. v. Posey, 147 Texas 392, 215 S. W. 2d 880.

MR. JUSTICE SHARP delivered the opinion of the Court.

Mrs. Leslie Sansing, joined pro forma by her husband, filed this suit against William R. Wells, surviving husband of Mrs. Ethel E. Wells, who died intestate, alleging ownership of a diamond ring by virtue of a parol gift of the ring by Mrs. Wells to Mrs. Sansing more than two months before Mrs. Wells died. Upon the close of the testimony for Mrs. Sansing, the trial court withdrew the case from the jury, granting Wells' motion for an instructed verdict, and directed the jury to find for Wells. Based upon such instructed verdict, the trial court rendered judgment in Wells' favor, directing that Mrs. Sansing take nothing by her suit. The Court of Civil Appeals reversed and remanded the cause to the trial court for further trial, holding that a fact issue existed. 243 S. W. 2d 254.

Mrs. Sansing alleged that her cousin, Mrs. Ethel E. Wells, gave her the diamond ring during the Christmas season of 1948, while visiting Mrs. Wells in San Antonio, Texas, which is some 200 miles from Houston, the home of Mrs. Wells; that Mrs. Wells died some weeks later from the ailment which was the basis of her apprehension at the time the gift was made. There were three of Mrs. Sansing's witnesses who testified about their conversations with Mrs. Wells regarding her giving the ring to Mrs. Sansing. Mrs. Ben E. Cavenaugh, of San Antonio, testified by deposition, and stated in substance that in her presence Mrs. Wells had given the diamond ring to Mrs. Sansing.

Mrs. Ida Barron, of Houston, testified that she saw Mrs. Wells when she returned from San Antonio after the holidays, and she was not feeling well, and had not been feeling well for several months. She was worried about her health. She told Mrs. Barron that she had given "Little Leslie" the diamond ring and the key to the lockbox in Houston where the ring was at that time; that she was afraid she was not going to live much longer if a change did not happen. She said no one but

herself and "Little Leslie" knew about the lockbox. Mrs. Barron also testified that after Mrs. Wells' death she went to the bank with Mrs. Sansing, who had the key to the lockbox. The bank would not open the lockbox without a court order, which was obtained. Mrs. Barron testified that the box was opened with the key Mrs. Sansing had in her possession and the one the bank had in its possession; that the diamond ring was in an envelope, and there was a slip of paper in the envelope with the ring, upon which was written, "For Little Leslie," and that it was in the handwriting of Mrs. Wells.

Mrs. Kendall, of Houston, testified that shortly after February 1, 1949, she had a talk with Mrs. Wells in regard to the disposition of the diamond ring; that she, Mrs. Kendall, had gotten a ring, and she went back to Mrs. Wells' desk and showed her the ring; and Mrs. Wells asked Mrs. Kendall if she had ever seen the ring her former husband had given her, and Mrs. Kendall replied that she had not. Then Mrs. Wells stated that it was much larger than Mrs. Kendall's ring, and that she had given it to "Little Leslie" at Christmas, which was about a month before she died. The ring was exhibited during the trial.

Curtis Regner, manager of the safety-deposit department of the bank, testified that the safety-deposit box was rented to Mrs. Wells; that the bank's record indicated that the box had not been entered by anyone from January 6, 1948, until March 7, 1949; that nothing was removed from the box; and that the diamond ring was in the box upon inventory on March 24, 1949. Mrs. Wells' contract of rental with the bank provided that only she should have access to the safety-deposit box, and although she could have done so, she never authorized the bank to permit Mrs. Sansing to open the box. The testimony also shows that, under the terms of Mrs. Wells' contract with the bank, prior to her death no one other than Mrs. Wells could have entered the lockbox, even with possession of the key.

The public policy of this State with regard to parol gifts is expressed in Article 3998, Vernon's Annotated Civil Statutes, which reads as follows: "No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, *or unless actual possession shall have come to, and remained with, the donee or some one claiming under him.*" (Emphasis supplied.)

The testimony offered by Mrs. Sansing definitely established that she never had physical, manual, or actual possession of the diamond ring in question from the date of the alleged gift, on December 26, 1948, to the date of Mrs. Wells' death, on March 6, 1949, or at any time up to the date of the trial; that the diamond ring remained in the safety-deposit box rented to Mrs. Wells by the Second National Bank of Houston from a time many months prior to the date of the alleged gift to a time after the death of Mrs. Wells. No testimony was introduced showing that the ring had ever been removed from the box, or that Mrs. Sansing, or anyone claiming under her, ever came in actual possession of the ring,—unless the delivery of a key to the box gave her such possession.

The language of the statute is plain. It states in positive terms what it takes to constitute a valid parol gift. The reason for the requirement of delivery, as provided for in the statute, is based upon both public policy and convenience, to prevent mistakes, misunderstanding, imposition, and perjury. This requirement of the statute is particularly applicable to parol gifts; and while there are some exceptions to the general rule requiring delivery, the facts of this case do not bring it under any of those exceptions. The courts sustain the rule that to constitute a gift inter vivos there must be a delivery of possession of the subject matter of the gift by the donor to the donee, and a purpose on the part of the donor to vest in the donee, unconditionally and immediately, the ownership of the property delivered. Garrett v. Hunt, Tex. Com. App., 283 S. W. 489; Harmon v. Schmitz, Tex. Com. App., 39 S. W. 2d 587; 38 C. J. S., Gifts, p. 794 et seq., § 18 et seq.; 24 Amer. Jur., p. 742 et seq., § 24 et seq.

In this case it is alleged that the delivery was made by a delivery of the key to the lockbox, and that such act on the part of Mrs. Wells constituted a valid parol gift of the ring. It is undisputed that Mrs. Sansing received no written authority from Mrs. Wells and the other held by the bank, and to enter the lockbox it was necessary to use both keys. Before the bank would permit Mrs. Sansing to enter the lockbox after Mrs. Wells' death, it required that she obtain a court order to do so. The bank would not let Mrs. Sansing have possession of the ring.

However desirable it may be to allow Mrs. Sansing to receive the ring as a gift from Mrs. Wells, the evidence intro-

duced, when considered in connection with the unmistakable terms of the statute, plainly shows that the requirements exacted by the statute to support a parol gift were not met. While it is true that at the time Mrs. Wells undertook to make the gift she was in San Antonio and the ring was in the lockbox in Houston, she knew the requirements of the bank before an entry into the lockbox could be made. Mrs. Sansing never undertook to obtain possession of the ring until after the death of Mrs. Wells, and she never did have possession of it. The testimony raised no fact issue to be determined, and the trial court was correct in instructing a verdict for Wells, and the Court of Civil Appeals erred in holding to the contrary.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered February 6, 1952.