**STATE of Texas, Appellant,**

v.

**F. B. ABERNATHY, Appellee.**

**No. 7803.**

Court of Civil Appeals of Texas.

Amarillo.

July 29, 1968.

Rehearing Denied Aug. 26, 1968.

Crawford C. Martin, Atty. Gen., George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst. Atty. Gen., J. C. Davis, W. O. Schultz and Brock Jones, Jr., Asst. Attys. Gen., Austin, for appellant.

Stone, Stone & Chambers, Amarillo, John C. Chambers Amarillo, of counsel, for appellee.

DENTON, Chief Justice.

This is a suit filed by F. B. Abernathy in his personal capacity in the probate court as a claim against the Estate of John Dukes, deceased. The State of Texas contested the claim as an interested person under the provision of the Texas Probate Code. From an order by the probate court allowing the claim of Abernathy as a gift causa mortis, the State appealed to the district court. The district court, by agreement, withdrew the case from the jury and entered judgment for the claimant.

John Dukes was an elderly man who lived alone. He died on November 8, 1966 and left no written will or living heirs. He lived in very modest circumstances in a small house on the business premises of Mrs. Marjorie Wallace. Although Mr. Dukes was described as "old" his age does not appear in the record. Dukes and Abernathy had been good friends for many years and according to statements Dukes made to Mrs. Wallace, Mrs. Stewart a

neighbor, and Paul Boxwell, an undertaker, Abernathy was his best friend and "was so good to him." He told both Mrs. Wallace and Mrs. Stewart on several occasions he wanted his property to go to Mr. Abernathy "if anything happened to him". Some two years prior to his death Mr. Dukes and the appellee met with Mr. Boxwell and made prearrangements for Mr. Dukes's funeral. Mr. Abernathy was to see that the agreed arrangements were carried out. It is uncontradicted that upon Mr. Dukes's death Mr. Abernathy did carry out his instructions.

Some three years before his death Mr. Dukes showed Mrs. Wallace a brown envelope and told her, "if anything happens to me, I want you to promise me you will take this to my friend." He identified the friend to be F. B. Abernathy, appellee. Dukes admonished her "about 30 times—'don't forget to take and give this to Mr. Abernathy—you know what to do—you got my instructions.'" She assured him each time she would carry out his instructions. Shortly before his death Mr. Dukes became seriously ill. As he was being taken to the ambulance for the hospital, Mrs. Wallace held up the brown envelope and asked him, "Mr. Dukes, would you like for me to take it and give it to him now?" He answered in the affirmative. She described his condition as "really ill, very ill". Mrs. Wallace gave the package to Abernathy the next day which was prior to Dukes's death. It was later discovered the envelope contained U. S. Government Series E Bonds in various denominations with a total face value of $11,300.00. During his last illness Mrs. Wallace testified Dukes was "scared because he had never been to a hospital" and that as he left his home in the ambulance he "grabbed my hand and held on and didn't turn loose until I promised him I would go on out to the hospital and see that no one hurt him; and just as soon as I walked into the hospital he just grabbed on like he was frightened." He died after being in the hospital two days.

The trial court found Mr. Dukes intended to give Mr. Abernathy the government bonds prior to his death; that Dukes was apprehensive concerning the prospect of his death as evidenced by his behavior at the time he instructed Mrs. Wallace to give the envelope to appellee; and that when Dukes instructed her to give the envelope to appellee he intended that the bonds be the property of appellee. The court concluded as a matter of law that Dukes made a gift causa mortis of the government bonds to appellee; and that such bonds became the property of appellee, subject only to the payment of debts owed by Dukes.

■ It is the contention of the State that under the facts of this case no valid gift either causa mortis or inter vivos to appellee was effected, but that the transaction must be considered as an invalid testamentary disposition. The argument is that there is no evidence and insufficient evidence to support the trial court's findings and conclusions that the essential elements of such a gift were shown. Our courts have uniformly held that in order to constitute a valid gift inter vivos or causa mortis, there must be a delivery of possession of the thing given; and the intention of the donor to vest in the donee unconditionally and immediately the ownership of the property delivered. Weems v. First National Bank of Winnsboro (Tex. Civ.App.) 234 S.W. 931; Wells v. Sansing, 151 Tex. 36, 245 S.W.2d 964; O'Donnell v. Halladay (Tex.Civ.App.) 152 S.W.2d 847 (ref'd w.o.m.); 27 Tex.Jur.2d, p. 158, Gifts, Sec. 12.

■ It is undisputed Mr. Dukes expressed his intention to several people on many occasions that he intended that his property go to appellee. This was the central theme of every witness who testified in the trial. He considered appellee his only real friend who had "been so good to him". He apparently had never married and had no close relatives. There can be no doubt Mr. Dukes was in advanced

years and very seriously ill just prior to his death.  There is a clear inference he had some apprehension of death even though Mrs. Wallace thought Mr. Dukes believed he would return to his home.  He was "frightened" when taken to the hospital and exhibited this emotion to his landlady.  It was at this time he directed that the envelope be delivered to appellee.  There is no evidence anyone knew the contents of the envelope except Mr. Dukes.  The delivery of it was made in accordance with his instructions.  The delivery of possession is an important element in determining whether or not a gift has been effected.  Hester v. Hester (Tex.Civ.App.) 205 S.W.2d 115.  When the clear intent to leave his property to appellee is considered together with the actual delivery of the envelope which contained practically all Dukes owned of value, we believe the probative evidence clearly supports the trial court's findings that a valid gift causa mortis was effected.

Appellant challenges other findings and conclusions of the trial court, but in view of our holding they become immaterial to this appeal.

The judgment of the trial court is affirmed.